798 F.2d 1409
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
STEINER OF MINNEAPOLIS, INC.; Leonard M. Steiner, Jr., Petitioners,
v.
COMMODITY FUTURES TRADING COMMISSION; Lewis F. Sawyer, Respondents.
 No. 85-1913.
 United States Court of Appeals, Fourth Circuit.
 Argued June 3, 1986.
Decided Aug. 8, 1986.
 
 Constantine John Gekas (Harvitt & Gekas, Ltd. on brief), for petitioner.
 Edward S. Geldermann (Whitney Adams on brief), for Commodity Futures Trading Commission.
 Barry Pinkowitz, P.C. on brief, for Lewis F. Sawyer.
 C.F.T.C.
 VACATED AND REMANDED.
 Before WIDENER, HALL and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Leonard M, Steiner and his wholly owned corporation, Steiner of Minneapolis, Inc. (collectively referred to as "Steiner"), petition for review of a decision of the COmmodity Futures Trading COMMission ordering them to pay $13,792, together with interest and costs, in reparations to a former client. From April 1979 through june 1982, Steiner operated an investment counseling business which specialized in advising on transactiOns in commodities futures, The business was located in Minneapolis, Minnesota. Until June 30, 1982, Steiner was registered with the Commodities Future Trading Commission in two capa cities: as a "Commodities Trading Advisor" (CTA) under the provisions of 7 U.S.C. Sec. 6m, and as an "Associated Person" associated with a "Futures Commission Merchant" under the provisions of 7 U.S.C. Sec. 6k. The Futures Commission Merchant with which Steiner was associated was a commodity brokerage house by the name of Lind-Waldock & Co.
 
 
 2
 In January, 1982, an investor named Lewis F. Sawyer contacted Steiner regarding the possibility of commodities futures investing. According to Sawyer, Steiner then made material misrepresentations to him which induced him to deposit $18,000 in an account with Lind-Waldock to be managed by Steiner. Sawyer's equity then allegedly shrank to $3,333 in a matter of weeks.
 
 
 3
 In the spring of 1982, Steiner ended his business as a trading advisor and moved to Indiana. On June 1, 1982, he closed his Minneapolis office, which had been located at 564 Minneapolis Grain Exchange, Minneapolis, Minnesota. Apparently, Steiner made no arrangements for the forwarding of mail sent to that address. Steiner alleged that he did arrange to maintain a Minneapolis telephone number, and that he hired an answering service to answer the telephone. The telephone number and answering service were allegedly maintained until September 1, 1983. Steiner appears also to have continued to maintain a residence in St. Paul, Minnesota, at 996 St. Clair Avenue, and to have continued to receive mail at that address after his move to Indiana. Sometime prior to March 31, 1983, the Commission did mail to Steiner notice of his registration as an Associated Person of a Future Commission Merchant, directing the correspondence to 996 St. Clair Avenue, St. Paul, Minnesota.[1]
 
 
 4
 On August 9, 1982, Lewis Sawyer filed a complaint with the Commission against Steiner and Lind-Waldock, alleging that they had engaged in fraudulent misrepresentations in violation of SS 4b and 4o of the Commodity Exchange Act, 7 U.S.C. Secs. 6b and 6o. Sawyer sought reparations of $14,667, plus interest, costs , and attorneys' fees.
 
 
 5
 On August 25, 1982, the Commission served the complaint on Steiner and Lind-Waldock by certified mail. The complaint was mailed to Steiner at his former business address, 564 Minneapolis Grain Exchange, Minneapolis, Minnesota. The complaint was re turned to the Commission with the notation, "MOVED--LEFT NO ADDRESS. RETURN TO SENDER." The Commission apparently made no further effort to serve Steiner with the complaint.
 
 
 6
 On May 18, 1983, a Commission Administrative Law Judge ruled that Steiner was in default and that further service of process on the two entities comprising Steiner was not required.
 
 
 7
 On March 22, 1984, the ALJ issued an Initial Decision. Because Sawyer and Lind-Waldock had agreed in February 1984 to settle their dispute for $875, the complaint against Lind-Waldock was dismissed. The ALJ awarded a default judgment against Steiner in the amount of $13,792 plus interest and costs.
 
 
 8
 Steiner assertedly did not become aware of the pendency of the case before the Commission until "the late spring of 1984." On August 27, 1984, Steiner filed a Motion to Vacate the Default Judgment. The ALJ denied that motion on September 19, 1984, ruling that it was Steiner's responsibility to maintain a current address on file with the Commission.
 
 
 9
 Steiner did not appeal the September 19, 1984 order to the full Commission. Instead, on October 17, 1984, Steiner filed a "Renewed Motion to Vacate the Default Judgment," raising new arguments designed to show that Steiner's conduct was excusable. On November 8, 1984, the ALJ denied that motion.
 
 
 10
 On November 28, 1984, Steiner filed a notice of appeal with the Commission which, on August 20, 1985, the Commission dismissed as untimely. The Commission ruled that, under 17 C.F.R. Secs. 12.23(b) and 12.401(a), Steiner was required to file his appeal within fifteen days after the issuance of the ALJ's order denying his first motion to vacate the default judgment. The Commission held that Steiner's second motion was effectively a motion for reconsideration of the first order, and, as such, did not provide him with a second opportunity to seek appellate review. The Commission also ruled that the filing of the second motion did not extend or toll the period for filing an appeal from the first motion.
 
 
 11
 Steiner now petitions for review of the Commission's order on the basis that the Commission denied due process by dismissing Steiner's appeal as untimely. The argument advanced was that the fifteen-day rule was a new rule and should not have been retroactively applied to his case. Prevailing on that argument, Steiner would presumably seek a remand for consideration of the appeal by the Commission. Second, Steiner argues that, even if the Commission properly dismissed the appeal and the ALJ 's decision thereby became the final decision of the Commission, that decision should be reversed because Steiner's due process rights were violated by the Commission's procedures for service of process. Steiner also argues for reversal on equitable grounds of the denial of the motion to vacate.
 
 
 12
 In view of the terseness of the handling of the matter by the ALJ we have limited our inquiry to the validity of the service effected on Steiner. Not satisfied that the record is complete enough to enable us to make a reasoned decision, we vacate and remand for a more complete detailing of the facts and explication of reasons for any action which is decided on by the Commission in light of the facts so detailed. We note, without necessarily intending to be exclusive, several matters which require attention:
 
 
 13
 1) 17 C.F.R. Sec. 3.30, in force at the time mail service was attempted in 1982, called for service to be made at the residence address, which appears to have been in the Commission's possession since some unspecified time prior to the date of the August 25, 1982 service.
 
 
 14
 2) The business address employed was no longer operative in August 1982 at the time mail service was attempted.
 
 
 15
 3) On a form granting an application for registration as an associated person, mailed to Steiner by the Commission prior to March 31, 1983, appeared a notification of need for the addressee to file a change of address notice with the post office. Was that duty similarly imposed on Steiner with respect to any communications addressed by the Commission to the Minneapolis address, and, if so, when was that done, and was there compliance by Steiner?
 
 
 16
 4) With the residence address of Steiner clearly in the possession of the Commission at a date prior to the default ruling of May 17, 1983 (and indeed, probably, as early as May 18, 1981), what explanation is there for the failure of the Commission to employ it to warn Steiner of the risk of a default judgment, which was ultimately entered in March of 1984?
 
 
 17
 5) What responsibility, if any, is attributable to Steiner for the designation, on the document appearing at Joint Appendix 53, of 564 Minneapolis Grain Exchange, Minneapolis, Minnesota as the home address? Also, when and under what circumstances did that document enter the records of the Commission?
 
 
 18
 VACATED AND REMANDED.
 
 
 
 [1]
 It appears that the residence address in St. Paul was available in records of the Commission, an application having been filed with the Commission, bearing the date of May 18, 1981. The application was for registration as an associated person